LUTHER B. and BERTHA SUE NELSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nelson v. Commissioner
Docket No. 18807-80.
United States Tax Court
T.C. Memo 1982-191; 1982 Tax Ct. Memo LEXIS 554; 43 T.C.M. (CCH) 1054; T.C.M. (RIA) 82191; April 13, 1982. Luther B. Nelson, pro se. John L. Hopkins, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1977 and 1978 in the amounts of $ 1,178 and $ 1,440, respectively, and an addition to tax for the calendar year 1978 under section 6653(a) [1] in the amount of $ 72. [2] The issue for decision is whether petitioners are entitled to deduct amounts spent by Luther B. Nelson in traveling from his home in Jasper, Tennessee, to Hartsville, Tennessee, and the costs of meals and lodging at Hartsville, Tennessee, as ordinary and necessary business expenses for the *555 years 1977 and 1978. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, filed a joint Federal income tax return for the calendar years 1977 and 1978 with the Director, Internal Revenue Service Center, Memphis, Tennessee. At the time of the filing of their petition in this case, petitioners resided in Jasper, Tennessee. Luther B. Nelson (petitioner) has lived in Jasper, Tennessee, all his life. On March 14, 1977, petitioner became employed by the Tennessee Valley Authority (TVA) as a heavy equipment operator at the Hartsville Nuclear Plant, Hartsville, Tennessee. On that day he signed a document, TVA Form 9880A, entitled "Appointment Affidavit and Conditions." Among the statements contained in this document was the following: "Trades and labor temporary construction hourly, not to extend past: 78 02 24." This same document showed that *556 petitioner was affiliated with the Operating Engineers' Local 917, Chattanooga, Tennessee. Petitioner had been employed by the TVA for a short period of time in 1967. His employment papers showed that he was a veteran. Petitioner, as a member of the Operating Engineers' Local 917, received his assignment to work for the TVA at the Hartsville Nuclear Plant through the union agent of that Local. Hartsville was approximately 135 miles from Jasper. However, petitioner took the assignment at Hartsville because the union agent had been unable to find him work near Jasper for more than a few days at a time. When petitioner accepted employment at the Hartsville plant, the work on the plant was only about 5 to 6 percent completed. If construction of the plant was to be completed, there would be a need for operating engineers at the site for some time. However, petitioner and the union agent both thought that petitioner could find work closer to his home in Jasper after a few months. In fact, no such work was located for petitioner and he worked at the Hartsville plant until February 24, 1978, when he was terminated in accordance with the provision in his employment agreement. Again, *557 petitioner through his union agent attempted to locate work nearer to Jasper. When no such work was forthcoming, petitioner was sent back to the Hartsville plant. He was not immediately put back to work because his blood pressure was too high and he was required to see his doctor and wait a few weeks for his blood pressure to go down before starting work again. On March 27, 1978, he began his reemployment at the Hartsville plant site and has been continuously employed there from that date until the time of the trial of this case although he has continued to look for employment nearer to Jasper. Work on the Hartsville Nuclear Plant was begun in the mid 1970's and it was expected that it would require at least 10 years to complete the plant. Even though in 1977 officials of the TVA knew it would be about 10 years before the Hartsville Nuclear Plant would be completed, it was the policy of the TVA to employ all hourly construction workers at that plant on a temporary basis. For some time prior to 1977 and up to approximately October 1978 when the provision was deleted from the "Appointment Affidavit and Conditions" signed by hourly workers, TVA placed a date of 11 months and some *558 odd days not to exceed 29 from the date of employment as the termination date of all hourly construction workers. These hourly construction workers were hired as temporary workers so that they could be dropped immediately from the TVA roles if necessary. TVA is an agency of the United States Government and at times was required by the Office of Management and Budget or a presidential directive to comply with certain employment ceilings. During the time the provision for termination of a temporary employee was contained in the "Appointment Affidavit and Conditions," officials of TVA were of the view that this provision further aided in quick termination of hourly construction employees if such quick termination were necessary. While this provision was in the appointment conditions, the temporary worker would be terminated for a period usually of approximately 10 workdays and after that brief termination period generally would be reemployed. In certain trades the chances of reemployment were well over 90 percent and for heavy equipment operators at the Hartsville plant the chances of being reemployed were better than 50 percent. When the 10-day furlough would occur, the employee *559 at times would be told that he would very likely be needed and be reemployed after the 10-day break. Since the provision for termination within 11 months and 29 days was deleted from the appointments of temporary hourly construction workers by the TVA prior to February 22, 1979, which was the stated termination date of petitioner's employment under the "Appointment Affidavit and Conditions" petitioner signed in March 1978, petitioner was not terminated in 1979. Even though it is not uncommon for heavy equipment operators to be laid off during the winter months if the weather is bad, petitioner has not been laid off in the winter while working at the Hartsville plant site. When petitioner went to work at the Hartsville Nuclear Plant in March 1977, he did not know how long he would be employed at that plant but hoped to soon find work nearer to Jesper. Petitioner drove from his home in Jasper, Tennessee, to Hartsville during 1977 and 1978 while employed at the Hartsville plant site every Sunday evening and drove back to Jasper where his wife and children were living every Friday night. Petitioner paid for lodging and meals at Hartsville during the week. Petitioner on his *560 Federal income tax return for the year 1977 deducted $ 5,006.20 as employee business expenses composed of $ 3,061.40 for meals and lodging and $ 1,944.80 for automobile expenses. On his 1978 Federal income tax return petitioner deducted $ 5,616.95 as employee business expenses composed of $ 3,495.35 for meals and lodging and $ 2,121.60 for automobile expenses. Respondent in his notice of deficiency disallowed these claimed deductions with the following explanation: It is held that, since the termination of your employment at this job site could not be foreseen within a fixed and reasonably short period, the employment was indefinite, rather than temporary, and any travel expenses incurred in connection therewith were nondeductible personal expenses rather than ordinary and necessary business expenses. * * * OPINION Section 162(a)(2) provides for a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business including traveling expenses while away from home in pursuit of a trade or business. Generally speaking, a taxpayer's home for the purpose of determining whether he is away from home in pursuit of a trade or *561 business within the meaning of section 162(a) is considered to be his principal place of employment. . However, when a taxpayer's employment at some location is temporary as distinguished from indefinite or indeterminate, he is considered while so employed to be away from home in pursuit of his trade or business. ; ; As we have pointed out on a number of occasions, employment is considered to be temporary where it can be expected to last only for a short period of time. ; . It is clear that petitioner in this case viewed all of his work at the Hartsville plant as temporary since he hoped to find employment nearer to Jasper, Tennessee. Petitioner testified that he believed in 1977 and 1978 that work would be available at the Hartsville plant for some time but did not know from day to day whether he would stay there. *562 The definition of "temporary" that this Court has used in determining whether an individual is entitled to deduct traveling expenses while away from home under section 162(a)(2) is not whether a taxpayer was looking for work at another location but rather how long his current employment might be expected to last. See . Petitioner testified that even though he did not know how long he would work at the Hartsville plant when he commenced his employment there in 1977, he was aware that it was likely work would be available there for a period of years. The record shows that TVA would have need for workers at the Hartsville plant for a number of years after 1977. The fact that petitioner hoped to find work in the Jasper area within a short period after he began work at the Hartsville plant site would not cause petitioner's employment at the Hartsville plant to be temporary rather than indefinite. The criteria is whether the employment, itself, is temporary not whether petitioner is looking for other employment. The fact of temporary layoffs interrupting otherwise continuous employment of a construction worker at a particular *563 site has not been considered to necessarily cause the taxpayer's employment to be temporary rather than indefinite. . Considering the facts in this case against the background of our holdings in other cases, we conclude that petitioner's employment at the Hartsville plant site in 1977 and 1978 was not temporary but was indefinite. The record shows that workers in petitioner's craft were in short supply in the Hartsville area. Although the termination agreement was initially put in petitioner's employment agreement, this provision did not mean that petitioner's work at the Hartsville plant would in fact be terminated for more than a short period. The record shows that the chances of petitioner not being terminated but merely furloughed were better than 50 percent. The real basis of petitioner's position in this case is that a construction worker's job is always temporary since he will be terminated when the project on which he is working is completed. It is clear that because of this fact it might be said that a construction worker never has permanent employment. However, this lack of absolute permanence is *564 not the criteria which this Court and other courts have used in determining whether a taxpayer's work is temporary as distinguished from indefinite or indeterminate. See , affd. ; , affd. . On the basis of this record, we conclude that petitioner is not entitled to deduct the expenses of driving his automobile from his home in Jasper to his work at the Hartsville plant site and the cost of his meals and lodging near the Hartsville plant site during the years 1977 and 1978 since he was not away from home in the pursuit of a trade or business within the meaning of section 162(a)(2). Decision will be entered for the respondent as to the deficiencies in tax, and for the petitioner as to the addition to tax under section 6653(a).
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue. ↩
2. At the trial respondent conceded that petitioner was not liable for any addition to tax under section 6653(a).↩